**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| EKATERINA GORELOVA,<br><br>Petitioner,<br><br>v.<br><br>WARDEN OR FACILITY ADMINISTRATOR OF ADELANTO DETENTION FACILITY, et al.,<br><br>Respondents. | NO. EDCV 26-0475 AS<br><br>**MEMORANDUM DECISION AND ORDER** |

**I.**

**INTRODUCTION**

On February 1, 2026, immigration detainee Ekaterina Gorelova ("Petitioner"), proceeding pro se, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 ("Petition") against: the Warden or Facility Administrator of Adelanto Detention Facility; Ernesto Santacruz, Acting Los Angeles Field Office Director for United States Immigration and Customs Enforcement ("ICE"); Todd M. Lyons, Acting ICE Director; Kristi Noem, former Secretary of the United States Department of Homeland Security ("DHS"); and Pamela Bondi, former United States

Attorney General (collectively "Respondents"). (Docket ("Dkt.") No. 1). Petitioner also filed an emergency motion for a Temporary Restraining Order ("TRO"). (Dkt. No. 2). On February 13, 2026, the Court denied Petitioner's TRO motion. (Dkt. No. 8). On March 19, 2026, Respondents filed a Return to the Petition. (Dkt. No. 14).

Petitioner subsequently obtained counsel and on July 23, 2026, Petitioner filed a First Amended Petition ("Amended Petition") with the Declaration of Sarah H. Hacobian ("Hacobian Decl.").[1] (Dkt. No. 23). The Amended Petition alleges Petitioner has been denied due process of law and is being detained under the wrong statutory provision. (Amended Petition, ¶¶ 106-209). Petitioner seeks, *inter alia*, her immediate release from custody. (Amended Petition at 50).

On July 30, 2026, Respondents filed an Answer to the Amended Petition, and Petitioner filed a Reply on July 31, 2026. (Dkt. Nos. 26-27).

On October 13, 2026, Respondents lodged a transcript of a bond hearing Immigration Judge ("IJ") Paul N. Medved held for Petitioner on December 9, 2025. (Dkt. No. 36). On October 14, 2026, Petitioner filed a Supplemental Brief addressing the bond hearing. (Dkt. No. 37).

The parties have consented to proceed before the undersigned Magistrate Judge in this matter. (See Dkt. Nos. 29-30, 33-34).

---

[1] The Amended Petition lists the same Respondents except current DHS Secretary Markwayne Mullin is substituted for former DHS Secretary Kristi Noem. (See Amended Petition at 1 & ¶¶ 17, 23).

## II.

## BACKGROUND

Petitioner is a native and citizen of the Russian Federation who presented herself for inspection at a United States port of entry on February 6, 2024, and was paroled into the country.[2] (Amended Petition, ¶¶ 3, 18, 26-30, 33-35; Hacobian Decl., ¶ 4, Exh. B). Following Petitioner's entry into the United States, DHS initiated removal proceedings against Petitioner and Petitioner applied for protection from removal, including asylum. (Amended Petition, ¶¶ 36-37).

During this time, Petitioner resided continuously in the community, remained available to immigration authorities, complied with all conditions of her release, and appeared for every scheduled proceeding. (Amended Petition, ¶¶ 31, 39-40).

On or around June 4, 2025, ICE arrested and detained Petitioner after a required appearance before the Immigration Court, and she has remained in ICE custody since that time. (Amended Petition, ¶¶ 32, 41-42, 64).

---

[2] Petitioner's I-94 form (Hacobian Decl., ¶ 4, Exh. B) "reflects that on [February 6, 2024, she] entered the United States under the 'DT' class of admission, which signifies admission for humanitarian reasons." Margaryan v. Bondi, 2026 WL 790879, *1 n.1 (C.D. Cal. 2026); Gasparyan v. Blanche, 2026 WL 2456687, *1 (C.D. Cal. 2026); see also Noori v. LaRose, 807 F. Supp. 3d 1146, 1157 (S.D. Cal. 2025) ("[T]he parole status conferred upon Petitioner was identified as 'DT,' which . . . described a 'humanitarian' parole.").

On December 9, 2025, IJ Medved conducted a custody redetermination hearing and denied Petitioner bond, determining she was a "flight risk." (Amended Petition, ¶¶ 45-51; Dkt. Nos. 14-1, 36). Petitioner appealed that decision to the Board of Immigration Appeals ("BIA"), where it remains pending. (Amended Petition, ¶¶ 52-53; Supplemental Brief, Exh. C).

On April 13, 2026, IJ Jonathan M. Brent denied Petitioner's applications for asylum and withholding of removal and ordered her removed from the United States. (Amended Petition, ¶¶ 55, 85; Supplemental Brief, Exh. B). On May 11, 2026, Petitioner appealed that decision to the BIA, where it remains pending. (Amended Petition, ¶¶ 56-58, 86-87).

**III.**

**DISCUSSION**

In her Amended Petition,[3] Petitioner contends the December 9, 2025 bond hearing was fundamentally unfair and denied her due process of law. (Amended Petition, ¶¶ 173-79). Respondents disagree, asserting this Court lacks jurisdiction to review the IJ's bond determination, Petitioner has failed to exhaust her administrative remedies as to this

[3] Since the Amended Petition supersedes the initial Petition, the Court addresses only the contentions raised in the Amended Petition. See Ramirez v. Cnty. of San Bernardino, 806 F.3d 1002, 1008 (9th Cir. 2015) (An "'amended [pleading] supersedes the original, the latter being treated thereafter as non-existent.'" (citations omitted)); Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992) ("[A]n amended pleading supersedes the original pleading" so that "after amendment the original pleading no longer performs any function and is 'treated thereafter as non-existent[.]'" (citation omitted)).

claim, and Petitioner has not identified any due process violation or error of law justifying habeas relief. (Answer at 1-6).

**A. The Court Has Jurisdiction Over Petitioner's Bond Hearing Claim**

Respondents contend that Section 1226(e) deprives this Court of jurisdiction to review the IJ's bond determination. (Answer at 2). The Court disagrees.

In general, under Section 1226(e), "the Court does not have jurisdiction to review discretionary bond decisions."[4] Soriano v. Hernandez, 830 F. Supp. 3d 1071, 1078 (W.D. Wash. 2026); Villa v. Mullin, 834 F. Supp. 3d 957, 961 (C.D. Cal. 2026); Rodriguez v. Hernandez, __ F. Supp. 3d __, 2026 WL 2432725, *2 (W.D. Wash. 2026). But Section 1226(e) does not . . . preclude 'habeas jurisdiction over constitutional claims or questions of law[,]'" Hernandez v. Sessions, 872 F.3d 976, 987 (9th Cir. 2017) (citation omitted); Martinez v. Clark, 124 F.4th 775, 781-82 (9th Cir. 2024), including mixed questions of law and fact. See Wilkinson v. Garland, 601 U.S. 209, 212 (2024) ("The application of a statutory legal standard . . . to an established set of facts is a quintessential mixed question of law and fact" reviewable as a question of law); Martinez, 124 F.4th at 779 ("[T]he

---

[4] Section 1226(e) provides:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole.

8 U.S.C. § 1226(e).

determination whether an alien is 'dangerous' for immigration-detention purposes is a mixed question of law and fact and is reviewable as a 'question of law.'" (citations omitted)). "As such, 'a district court has jurisdiction to review an [IJ's] discretionary bond denial where [– as here –] that bond denial is challenged as legally erroneous or unconstitutional.'"[5] Rodriguez, __ F. Supp. 3d at __, 2026 WL 2432725 at *2 (quoting Soriano, 830 F. Supp. 3d at 1078).

**B. Exhaustion of Administrative Remedies is not Required**

Respondents next contend this action should be dismissed because Petitioner failed to exhaust her administrative remedies by appealing the bond decision to the BIA. (Answer at 3-5).

"In order to seek habeas relief under section 2241, . . . a petitioner must first, 'as a prudential matter,' exhaust his or her available administrative remedies." Singh v. Napolitano, 649 F.3d 899, 900 (9th Cir. 2010) (per curiam) (citation omitted); see also

---

[5] Respondents also conclusorily suggest this Court lacks jurisdiction under Section 1252(a)(2)(B)(ii). (Answer at 2). But for the reasons discussed herein, the Court concludes it has jurisdiction to address Petitioner's constitutional challenge to the bond hearing. See, e.g., Manaie v. Immigr. & Customs Enf't, 2026 WL 917614, *3 n.2 (C.D. Cal. 2026) ("Because Section 1226(e) does not bar the review of Petitioner's due process challenge, neither does the discretionary review provision in Section 1252(a)(2)(B)(ii)."); Hernandez v. Mullin, 2026 WL 846037, *4 (C.D. Cal. 2026) ("Because Respondents do not have discretion to violate the Constitution, notwithstanding their discretion over bond determinations in general, § 1252(a)(2)(B)(ii) does not preclude jurisdiction in this action. As with § 1226(e), Petitioner presents at least a mixed question of law and fact, rather than an attack on the factual determinations of the IJ within the realm of discretion afforded to Respondents." (citation omitted)).

Hernandez, 872 F.3d at 988 ("The exhaustion requirement is prudential, rather than jurisdictional, for habeas claims."); Ward v. Chavez, 678 F.3d 1042, 1045 (9th Cir. 2012) ("As a prudential matter, courts require that habeas petitioners exhaust all available judicial and administrative remedies before seeking relief under § 2241."). Courts may require prudential exhaustion when:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

Hernandez, 872 F.3d at 988 (quoting Puga v. Chertoff, 488 F.3d 812, 815 (9th Cir. 2007)). "Nonetheless, even if the three *Puga* factors weigh in favor of prudential exhaustion, a court may waive the prudential exhaustion requirement if 'administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void.'" Hernandez, 872 F.3d at 988 (quoting Laing v. Ashcroft, 370 F.3d 994, 1000 (9th Cir. 2004)).

Here, even assuming *arguendo* that the three Puga factors weigh in favor of prudential exhaustion, waiver of administrative remedies is appropriate. "As other courts have recognized under similar circumstances, BIA appeals can take months before resolution. In the meantime Petitioner would be subject to detention that is almost

certainly unlawful, and thus would suffer irreparable injury." Mendoza v. Noem, 2026 WL 923311, *5 (C.D. Cal. 2026); Zakharenkova v. Mullin, 2026 WL 1454524, *3 (C.D. Cal. 2026); see also Nazari v. Mullin, __ F. Supp. 3d __, 2026 WL 2879665, *5 (W.D. Wash. 2026) ("Petitioner alleges an ongoing constitutional injury arising from his prolonged detention without a constitutionally sufficient bond hearing. Requiring him to remain detained while pursuing an administrative appeal that is incapable of reaching that constitutional issue would delay review without meaningfully advancing the purposes served by exhaustion."); Soriano, 830 F. Supp. 3d at 1079 ("[G]iven the lengthy delays inherent in the current appeals process, the Court finds Petitioner will suffer irreparable injury if he is required to wait for a BIA decision before being permitted to file a habeas claim."); Garcia v. Hyde, 817 F. Supp. 3d 112, 125 (D. R.I. 2025) ("Mr. Garcia ultimately raises a constitutional challenge in his habeas petition, an area over which the Immigration Court and the BIA lack any authority to adjudicate, thereby rendering appeal to those bodies futile."); Kumar v. Rios, 2026 WL 1764923, *3 (C.D. Cal. 2026) ("Even where, as here, a petitioner has appealed a bond determination to the BIA, 'requiring Petitioner to be subjected to unlawful detention pending the BIA's decision would [also] cause irreparable harm.'" Further, even if the BIA were to ultimately reverse the IJ's decision denying bond, that would not afford Petitioner an adequate administrative remedy for his prolonged detention in the interim. '[B]ecause of delays inherent in the administrative process, BIA review would result in the very harm that the bond hearing was designed to prevent: prolonged detention without due process during lengthy and backlogged removal proceedings.'" (citations omitted)); Hernandez v. Mullin, 2026 WL 846037, *8 (C.D.

Cal. 2026) ("[R]equiring Petitioner to be detained in alleged violation of his constitutional right to due process, pending the BIA's decision would cause irreparable harm, which alone provides a sufficient basis to waive exhaustion. . . ."). Accordingly, Petitioner is excused from having to exhaust administrative remedies, and Respondents' request to dismiss the pending Petition for failure to exhaust administrative remedies is denied.

**C. Petitioner is Entitled to Relief on Her Bond Hearing Claim**

"The determination of whether a noncitizen is 'dangerous' or a flight risk for immigration-detention purposes involves a mixed question of law and fact that is reviewable in habeas proceedings" under an abuse of discretion standard. Vasquez Lopez v. Hernandez, 830 F. Supp. 3d 1097, 1100 (W.D. Wash. 2026); Martinez, 124 F.4th at 779-80, 784; Villa, 834 F. Supp. 3d at 961. "Under an abuse of discretion standard, '[the Court] cannot reweigh evidence . . . [but] can [only] determine whether the [IJ] applied the correct legal standard.'" Martinez, 124 F.4th at 785 (citation omitted); Villa, 834 F. Supp. 3d at 961; Padilla Paz v. Hernandez, 833 F. Supp. 3d 1180, 1188 (W.D. Wash. 2026).

When assessing "whether an alien is a danger to the community or a risk of flight," an IJ may consider the following factors:

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they

> may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

Martinez, 124 F.4th at 783 (quoting In re Guerra, 24 I. & N. 37, 40 (BIA 2006)); Padilla Paz, 833 F. Supp. 3d at 1188.

On December 9, 2025, after being detained for just over six months, Petitioner received a Rodriguez bond hearing, which "is afforded to individuals who are in immigration custody for six months or longer, and provides that the government bears the burden to demonstrate by clear and convincing evidence that Petitioner is a flight risk or danger." Gyurjinyan v. Janecka, 2026 WL 2140283, *2 (C.D. Cal. 2026); see also Ankit v. Warden Desert View Annex, 2026 WL 2677304, *1 n.2 (C.D. Cal. 2026) ("'Named after the Ninth Circuit's decision in *Rodriguez v. Robbins*, 804 F.3d 1060 (9th Cir. 2015), which has an extensive history that need not be recounted here, a *Rodriguez* bond hearing is a periodic custody redetermination proceeding — required in the Central District of California (for reasons not pertinent here) — where the government must show at six-month intervals that a detainee's continued detention pending removal proceedings is justified by clear and convincing evidence of flight risk or danger to the community.'"

(citation omitted)). Thereafter, IJ Medved concluded Petitioner was a "flight risk" and denied her bond. (Dkt. Nos. 14-1 and 36).

Respondents asserts that, pursuant to Rodriguez, "the IJ found that Respondents proved, ***by clear and convincing evidence***, that Petitioner is such a flight risk that no bond is appropriate." (Answer at 2 (emphasis added)). But the IJ made no such finding. The IJ's denial order does not reference the burden of proof but simply states bond was denied because of "Flight risk." (Dkt. No. 14-1). Nor does the bond hearing transcript discuss the burden of proof or suggest the IJ placed the burden on Respondents. (Dkt. No. 36). Instead, the record makes clear that the IJ did not apply "'the correct legal standard'" in conducting the bond hearing. Martinez, 124 F.4th at 785 (citation omitted); see also Melchor-Melchor v. Noem, 2026 WL 760058, *1 (C.D. Cal. 2026) ("Upon the Court's review of the Bond Hearing Transcript, it is clear that the IJ did not hold Respondents to a clear and convincing burden of showing that Petitioner was a flight risk.").

Here, neither the IJ's order denying Petitioner bond – which simply states "Flight risk" – nor the remarkably brief bond hearing transcript mention the Guerra factors, let alone meaningfully apply them to Petitioner.[6] (See Dkt. Nos. 14-1, 36). The entire explanation IJ Medved gave for denying Petitioner bond was his statement "I believe [Petitioner] is a flight risk because if she didn't come in through the CBP One App, which apparently [she] may not have, then she's not

[6] The bond hearing transcript spans less than five full pages with the first page consisting solely of introductions and the swearing in of Petitioner.

eligible potentially for CLP."[7] (Dkt. No. 36 at 5). Thus, at best, IJ Medved considered a single Guerra factor – manner of entry – in denying Petitioner bond, basing his flight risk decision solely on his concern that Petitioner might have entered the United States without inspection. (Id.). But relying on mere speculation is not 'evidence of flight that remotely approaches the clear and convincing standard.'" Muzahir v. Chestnut, 837 F. Supp. 3d 1154, 1159 (E.D. Cal. 2026) (citations omitted); see also De La Torre Ferretiz v. Hernandez, 2026 WL 2123037, *5 n.4 (W.D. Wash. 2026) ("[S]peculation alone is not enough to satisfy the clear and convincing standard."). Moreover, the IJ's speculation about Petitioner's manner of entry was incorrect. As Petitioner's attorney explained without contradiction at the bond

---

[7] CLP stands for the "Circumvention of Lawful Pathways" rule ("Rule"). See Morales v. Blanche, __ F.4th __, 2026 WL 2564025, *5 (9th Cir. 2026).

> Under the Rule, all non-Mexican adults and families seeking asylum are presumed ineligible for such relief unless they meet one of the Rule's limited exceptions. To avoid the presumption of ineligibility, asylum seekers must show that they: (1) were authorized to travel to the U.S. "to seek parole, pursuant to a DHS-approved parole process"; (2) applied for and were denied asylum or other protection in another country through which they traveled; or (3) "[p]resented at a port of entry" with a prescheduled appointment made through a smartphone on the U.S. Customs and Border Protection One application ("the CBP One app"), or without an appointment if they can demonstrate "by a preponderance of the evidence that it was not possible to access or use the DHS scheduling system due to language barrier, illiteracy, significant technical failure, or other ongoing and serious obstacle."

Id. In Morales, the Ninth Circuit held "the Rule is inconsistent with the asylum statute." Id. at *22. For present purposes, it is enough to note that IJ Medved provided absolutely no explanation for why he believed the potential application of the Rule to Petitioner related in any manner to the determination that Petitioner was a flight risk.

hearing, Petitioner "had a CBP One appointment, and she used the appointment."[8] (Lodged Doc. 36 at 4; see also Hacobian Decl., ¶ 4, Exh. B). "'There cannot be a correct application of a standard to a set of facts when the facts relied on are incorrect[,]'" and "the IJ abused his discretion here in his erroneous application of the law to the facts in this case." Cardenas v. Blanche, 2026 WL 2110631, *4 (D. Nev. 2026) (quoting K.G.M.Q. v. Bondi, 2026 WL 962609, *11 (W.D. Wash. 2026)); Montoya Chavarria v. Chestnut, 2026 WL 2444749, *5 (E.D. Cal.), report and recommendation adopted by, 2026 WL 2815052 (E.D. Cal. 2026).

Additionally, even if the IJ's speculation regarding Petitioner's entry into the United States had been correct, the IJ failed to explain how such entry made Petitioner a flight risk. The IJ's "reliance on Petitioner's manner of entry, without evidence of individualized concerns related to Petitioner, does not reach the clear and convincing standard." Muzahir, 837 F. Supp. 3d at 1159; see also Nazari, __ F. Supp. 3d at __, 2026 WL 2879665 at *6 ("To sustain a permissible flight risk finding, any factor considered by an IJ must rationally bear on a noncitizen's likelihood to appear for immigration proceedings."); Tiboko-Tifuh v. Noem, 2026 WL 1603795, *2 (S.D. Cal. 2026) ("Here, the IJ's flight-risk finding — based on no evidence of flight risk beyond Petitioner's manner of entry and despite a body of evidence to the

---

[8] This conclusion is further supported by IJ Brent's April 13, 2026 Removal Order, which reviewed the record and found that Petitioner "signed up for an appointment via the CBP One Application. She received an appointment for February 6, 2024. The day of her appointment, Respondent applied for admission at the Calexico Port of Entry." (Supplemental Response, Exh. B at 4).

contrary — compels the conclusion that he failed to hold the government to the clear and convincing evidence standard ordered by this Court.”).

“In sum, the IJ abused [his] discretion by misapplying the legal standard to the evidence presented to [him]. The IJ reached a conclusion untethered to the evidence before [him] and erred as a matter of law in finding Petitioner poses a flight risk and in denying her bond. Because of this, the proceeding was fundamentally deficient, and Petitioner was denied due process of law.” Rodriguez, __ F. Supp. 3d at __, 2026 WL 2432725 at *5; see also Soriano, 830 F. Supp. 3d at 1075-76 (“[T]he “Court finds the immigration judge abused his discretion in denying bond and, as a result, Petitioner’s bond hearing was constitutionally deficient.”); Moreno Flores v. Santacruz, 2026 WL 2691657, *3 (C.D. Cal. 2026) (“‘Given the significant liberty interest at stake for noncitizens in immigration detention and the weak or nonexistent governmental interest in continued detention without adequate process, courts [] have found due process violations where IJs abuse discretion in bond determinations.’” (quoting Soto Gimenez v. Hernandez, 2026 WL 1156075, *6 (W.D. Wash. 2026)); Ko v. Mullin, 2026 WL 1454208, *6 (C.D. Cal. 2026) (“[T]here is no indication in the record before this Court that the IJ made the flight-risk decision based on the totality of the circumstances or considered any mitigating factors. . . . Thus, the Court finds that the IJ’s flight-risk finding and bond denial constitute abuse of discretion.” (citations omitted)).

“Federal courts have a fair amount of flexibility in fashioning specific habeas relief.” Burnett v. Lampert, 432 F.3d 996, 999 (9th Cir. 2005); Soriano, 830 F. Supp. 3d at 1081. “Upon determining that

an IJ provided a petitioner with a legally or constitutionally inadequate bond hearing, district courts have either ordered petitioner's immediate release or ordered that Respondents provide petitioner with a new constitutionally adequate bond hearing[.]" Perez Velasquez v. Bondi, 2026 WL 1042479, *7 (S.D. Cal. 2026) (citations omitted); Nola v. Dep't of Homeland Sec., 2026 WL 1330294, *10 (C.D. Cal. 2026). In this case, "because [Petitioner's] bond hearing was legally and constitutionally inadequate, and the Court finds no adequate basis for [Petitioner's] continued detention, the Court concludes that the 'typical remedy' of release is appropriate."[9] Minango v. Bondi, 2026 WL 1257028, *5 (D. Nev. 2026); Soriano, 830 F. Supp. 3d at 1081; Nola, 2026 WL 1330294 at *10; Melchor-Melchor, 2026 WL 760058 at *3; Miri v. Bondi, 2026 WL 622302, *12 (C.D. Cal. 2026); see also Munaf v. Green, 553 U.S. 674, 693 (2008) ("Habeas is at its core a remedy for unlawful executive detention. The typical remedy for such detention is, of course, release." (citation omitted)).

## IV.

## ORDER

Accordingly, it is hereby ORDERED that the Petition (Dkt. No. 1) is **GRANTED.** Respondents shall immediately release Petitioner (A# 244-385-084) from immigration custody subject to the conditions of Petitioner's most recent order of supervision, if any, and without the imposition of any new or further restraints, such as reporting requirements, GPS, or electronic monitoring. Respondents are also enjoined from re-detaining

---

[9] Having so concluded, the Court need not address the other claims Petitioner raises.

Petitioner absent strict compliance with the requirements of due process and all applicable statutes and regulations.

Additionally, the Court ORDERS that Respondents shall file a declaration by no later than 5:00 p.m. on October 21, 2026, confirming Petitioner has been released from custody. IT IS SO ORDERED.

DATED: October 19, 2026

/s/
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE